IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ARNULFO ESTRADA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18 C 2170 |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | Judge John Z. Lee |
| a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Arnulfo Estrada ("Estrada") brought this *pro se* action under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. 2000e *et seq.*, alleging that the BNSF Railway Company ("BNSF") fired him because he is Mexican-American. The Railway has moved for summary judgment [31]. For the reasons that follow, the motion is granted.

## Background

### I.   Local Rule 56.1

In this district, a party opposing summary judgment must file a response to the moving party's statement of uncontested material facts. *See* LR 56.1(b). If the party opposing the motion fails to do so, that party is deemed to have admitted all of the material facts asserted in the moving party's statement. *See* LR 56.1(b)(3)(C). As a *pro se* litigant, Estrada received a notice informing him of these rules. *See* LR 56.2; *see also* Pro Se Not., ECF No. 34. Yet Estrada did not respond to BNSF's statement

of facts. By operation of the Local Rules, Estrada has admitted the facts set forth in the Railway's LR 56.1(a)(3) statement. For that reason, the following facts, taken from BNSF's statement, are undisputed.

## II. Relevant Facts

### A. BNSF's Safety Rules

In a trainyard, small distractions can cause big problems. *See* Def.'s LR 56.1 Statement ("SOF") ¶ 3, ECF No. 32. To prevent cell-phone-related accidents, BNSF requires employees to adhere what it calls the "Electronic Devices Intermodal Safety Fundamental." *Id.* ¶ 11. Under that rule, "Intermodal Equipment Operators . . . must turn off and stow out of sight cellular telephones and/or personal electronic devices" whenever they leave "predetermined areas of safety." *Id.* In the Cicero trainyard where Estrada worked, for example, the Railway designated the "main building" and "auxiliary building" as the only places where employees could use their phones. *Id.* ¶ 12.

Every year, BNSF trains its staff to follow fourteen Intermodal Safety Fundamentals, including the Electronic Devices Rule. *Id.* ¶ 10. Recognizing that training may not always be sufficient, the Railway has a policy of disciplining employees who break those rules. *Id.* Under that policy, failing to comply with any Intermodal Safety Fundamental counts as a "Serious or Level S" infraction. *Id.* ¶ 21.

A staff member who commits a Level S violation can expect to receive a 30-day suspension and a 36-month probation, which BNSF calls a "review period." *Id.* ¶ 22. That review period pauses when an employee is suspended or fired and resumes if the employee returns to active service. *Id.* ¶ 24. In general, employees who flout the

Railway's rules during the review period face heightened discipline. *Id.* ¶ 19. Indeed, BNSF typically fires staff members who contravene the Intermodal Safety Fundamentals during a review period. *Id.* ¶ 77.

## B. The October 22, 2013 Incident

Beginning in 2009, Estrada served as an Intermodal Equipment Operator ("Operator") at BNSF's Cicero, Illinois trainyard. SOF ¶ 26. In that role, Estrada drove a truck around the yard and moved containers on and off trains. *Id.* ¶ 27. Throughout his tenure, Estrada received annual training in the Intermodal Safety Fundamentals. *Id.* ¶ 15.

During Estrada's October 22, 2013 shift, a surveillance camera caught him breaking several safety rules. *Id.* ¶ 27. Estrada failed to stop at a stop sign, then checked his cell phone in the work area, and finally tampered with the camera in his truck in an unsuccessful attempt to conceal his misconduct. *Id.* Having reviewed the surveillance footage, BNSF determined that Estrada had committed multiple Level S violations and terminated him. *Id.* ¶ 36.

Dismayed, Estrada appealed BNSF's decision to an independent arbitrator. *Id.* ¶ 37. After a two-year delay, the arbitrator ordered the Railway to convert Estrada's dismissal into "a [single] Level S time-served suspension commencing on November 22, 2013." *Id.* ¶¶ 36–37. In keeping with the arbitrator's decision, BNSF allowed Estrada to return to work on August 17, 2015. *Id.* ¶ 39. Because the 36-month review period that attends Level S violations paused between the October 2013 incident and the August 2015 reinstatement, BNSF calculated that Estrada would remain on probation until August 2018. *Id.* ¶ 40.

3

## C. The May 11, 2017 Incident

For the most part, Estrada settled back into his job at the Cicero trainyard without incident. At times, however, Estrada sensed that his supervisor, Joe Long, was watching him. SOF ¶ 62. Among other concerns, Estrada suspected Long of following him around the yard, monitoring him via surveillance cameras, and recommending that he be drug tested. *Id*. Though he did not know for sure, Estrada believed that Long targeted him because of the arbitrator's reinstatement decision. *Id*. ¶¶ 62–63.

Estrada's tenure at the Railway came to an end on May 11, 2017. *Id*. ¶ 44. That morning, Scott Jenkins, BNSF's Director of Hub & Facility System Safety, visited the Cicero trainyard. *Id*. ¶ 45. Accompanied by Dustin Padilla, BNSF's Manager of Hub Operations, Jenkins drove around the trainyard looking for safety risks. *Id*. At one point, Jenkins and Padilla spotted a driver using his cell phone. *Id*. ¶¶ 46–47. It was Estrada. *Id*. ¶ 46. During the subsequent investigation, Estrada conceded that he had been texting his wife. *Id*. Finding that Estrada had committed a second Level S violation within the review period for his first Level S violation, BNSF fired him. *Id*. ¶ 58.

## D. Comparable Employees

BNSF regularly disciplines employees who disregard the Intermodal Safety Fundamentals. SOF ¶¶ 75–79. The Railway highlights the following examples:

- **Holland Boyd:** BNSF classifies an employee's failure to wear a seatbelt as a Level S violation. *Id*. ¶ 77. So, when an African American Operator named

4

Holland Boyd was caught without a seatbelt, the Railway suspended him for 30 days and imposed a 36-month probationary period. *Id*. Before the review period ended, BNSF managers spotted Boyd using a cell phone in the trainyard. *Id*. Since Boyd had committed a second Level S infraction while he was on probation, the Railway fired him. *Id*.

- **Courtney Dixon, Edward Cunningham, Alvino Harris, Eric Macker, Jason Ross, Duane Stone, and Washington:** In 2017, BNSF disciplined at least seven Cicero Operators for using their cell phones. *Id*. ¶ 79. When they were discovered, none of those employees was on probation. *Id*. As a result, each received a 30-day suspension and a 36-month review period. *Id*.

- **Scott Anderson:** Around the same time that Estrada was fired, BNSF found Scott Anderson—an African American Operator with no record of misconduct—sleeping in his vehicle. *Id*. ¶¶ 75–76. Under the Railway's rules, sleeping on the job counts as a Standard violation, not a Level S violation. *Id*. For that reason, BNSF reprimanded Anderson and imposed a 12-month review period. *Id*.

### III. Procedural History

After BNSF fired him for the second time, Estrada again appealed to an independent arbitrator. SOF ¶ 58. This time, however, the arbitrator upheld the Railway's decision. *Id*. Determined to hold BNSF accountable, Estrada secured a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). *See* Am. Compl. at 9, ECF No. 8. Then he filed this lawsuit. *Id*.

## Legal Standard

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has sufficiently demonstrated the absence of a genuine issue of material fact, the nonmovant must then set forth specific facts demonstrating that there are disputed material facts that must be decided at trial. *Id.* at 321–22.

To survive a motion for summary judgment, the proponent of a Title VII discrimination claim must produce sufficient evidence for a reasonable factfinder to conclude that "the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge." *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). One of the ways that a plaintiff can meet this burden is by using the framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under that framework, a plaintiff must present evidence that "(1) [ ]he is a member of a protected class, (2) [ ]he was meeting the [employer's] legitimate expectations, (3) [ ]he suffered an adverse employment action, and (4) similarly situated employees outside of h[is] protected class were treated more favorably." *Fields v. Bd. of Educ. of City of Chi.*, 928 F.3d 622, 625 (7th Cir. 2019).

But a Title VII plaintiff need not rely on *McDonnell Douglas* to withstand summary judgment. *Ortiz*, 834 F.3d at 765. Instead, a plaintiff may "simply point to evidence in the record from which a reasonable jury could find prohibited

discrimination." *Curtis v. City of Chicago*, No. 16 C 8042, 2019 WL 3776154, at *10 (N.D. Ill. Aug. 12, 2019).

## Analysis

For two reasons, BNSF asks the Court to grant summary judgment in its favor.[1] *See* Mem. Supp. Summ. J. Mot. ("Mot. Summ. J.") at 3, ECF No. 33. First, Estrada's Level S violations establish that the Railway had a legitimate reason for firing him. Second, Estrada has failed to show that BNSF treated similarly-situated employees, who were not Mexican-American, any differently. The Court examines each argument in turn.

### I. BNSF's Legitimate Expectations

Estrada has not set forth sufficient facts to demonstrate the second element of a *prima facie* discrimination claim, namely, that he met BNSF's legitimate job expectations at the time he was fired. As Estrada admits, he used his cell phone in the trainyard's work area on October 22, 2013 and again on May 11, 2017. SOF ¶ 27; ¶¶ 47–48. Also, Estrada has failed to put forward any reason why the cell phone prohibition would be illegitimate, and the Court has found none. To the contrary, cell phone use by employees responsible for moving trucks and containers around a trainyard poses obvious hazards. *Id.* ¶ 8. Of course, it is tempting to second-guess why BNSF elected to punish cell phone use more severely than sleeping on the job,

---

[1] BNSF also suggests that even if Estrada could overcome these hurdles, he would not be able to establish that the Railway's stated explanation for firing him was pretextual. *See* Mot. Summ. J. at 9. As Estrada fails to support a prima facie case under the *McDonnell Douglas* framework, the Court sees no reason to reach this argument.

7

for example. *See id.* ¶¶ 75–76. But courts do not "sit as 'super-personnel' to question the wisdom or business judgment of employers." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). Ultimately, because Estrada failed to live up to BNSF's legitimate expectations, he cannot establish a *prima facie* case under the *McDonnell Douglas* framework.

## II.  Similarly-Situated Employees

Estrada has also failed to present enough evidence to support the fourth element of the *McDonnel Douglas* framework. To satisfy that requirement, Estrada must spotlight "at least one similarly situated employee, outside of [his] protected class, was treated more favorably than [he was]." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 981 (7th Cir. 2014). As a general matter, "[a] similarly situated employee must be directly comparable to the plaintiff in all material respects." *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 504 (7th Cir. 2014) (citations omitted). To that end, courts consider whether the plaintiff and the allegedly comparable employee "had the same supervisor, were subject to the same employment standards, and engaged in similar conduct." *Majors v. General Elec. Co.*, 714 F.3d 527, 538 (7th Cir. 2013).

Here, Estrada has only highlighted one allegedly comparable employee, Scott Anderson. SOF ¶ 76. It is true that, as Intermodal Equipment Operators at the Cicero trainyard, Anderson and Estrada shared the same supervisor. *Id.* But the similarities end there. Unlike Estrada, Anderson enjoyed a clean disciplinary record. *Id.*; *see, e.g.*, *Hester v. Indiana State Dep't of Health*, 726 F.3d 942, 948 (7th Cir. 2013)

8

(refusing to classify a coworker as comparable because the plaintiff had been "placed on a Work Improvement Plan," but the coworker had not). Also, BNSF found that Anderson had been sleeping in his truck, an infraction that BNSF considered less serious than using a cell phone in the trainyard. SOF ¶ 76. Due to these differences, Anderson does not qualify as a comparable employee. As a result, Estrada cannot establish the fourth element of the *McDonnell Douglas* framework.

### III. Viewing the Evidence as a Whole Under *Ortiz*

As explained earlier, a Title VII plaintiff need not depend on *McDonnell Douglas* or any other framework. In *Ortiz*, the Seventh Circuit refocused the inquiry on "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge." 834 F.3d at 765.

Having reviewed the evidence in its entirety, the Court is convinced that no reasonable jury could find in Estrada's favor. The only hint that BNSF discriminates against Mexican-American employees is Estrada's assertion to that effect. SOF ¶ 75. Without more, however, Estrada's speculation about the Railway's motives is not enough for his claim to survive summary judgment. *See, e.g.*, *Davis v. Brennan*, No. 14 C 753, 2016 WL 5476251, at *3 (N.D. Ill. Sept. 29, 2016) (holding that the plaintiff "must do more than simply point to her race . . . and argue that she believes that unfavorable things happened to her because of [it]").

Besides, Estrada has since changed his story. SOF ¶ 68. During discovery, Estrada testified that he now thinks that BNSF fired him because he convinced an

arbitrator to reinstate him after the October 2013 incident. *Id*. Apparently, Estrada no longer believes that the Railway discriminated against him on account of his Mexican-American heritage; based on this record, neither would a reasonable jury.

In any event, BNSF has marshalled overwhelming evidence that Estrada's firing resulted from his failure to follow the no-cell-phones rule. Indeed, the record shows that the Railway consistently imposed serious disciplinary measures on employees who broke that rule. *Id*. ¶ 14. Nothing suggests that BNSF applied that rule any differently to Estrada or other Mexican-American employees as compared to employees of other backgrounds. To the contrary, Estrada received the same punishment as Holland Boyd, an African-American Operator who committed two Level S violations. *Id*. ¶ 77. In light of this evidence, a reasonable jury could not find that Estrada's national origin had anything to do with BNSF's decision to fire him.

## Conclusion

For the reasons set forth above, BNSF's motion for summary judgment [31] is granted. This case is terminated.

**IT IS SO ORDERED.**　　　　　　　　ENTERED:  2/27/20

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　**JOHN Z. LEE**
　　　　　　　　　　　　　　　　　　　　**United States District Judge**